UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WILLIAM H. MILLER, | : | Case No. 3:09-cv-460 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| PATRICK R. DONAHOE, Postmaster General, | : | |
| Defendant. | : | |

_____

**DECISION AND ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 31)**
_____

This civil case is before the Court on the Motion for Summary Judgment (Doc. 31) filed by Defendant Patrick R. Donahoe, Postmaster General of the United States Postal Service ("USPS"). Plaintiff filed a Response to Defendant's Motion (Doc. 35-1), and . Defendant filed a Reply Memorandum (Doc. 39). Defendant's Motion is now ripe for decision by the Court.

**I. STATEMENT OF FACTS[1]**

Plaintiff William Miller ("Plaintiff") is a Caucasian male born in 1955 and was employed by the United States Postal Service (USPS), Cincinnati District, from 1973 until the end of 2010. Plaintiff retired from the USPS on December 31, 2010.

---

[1] Pursuant to the Standing Order of the Court, Defendant filed a Proposed Statement of Undisputed Facts. (Doc. 31-1, PAGEID 138-147). Plaintiff responded to the Proposed Statement of Undisputed Facts. (Doc. 37). This statement of facts is based upon these statements of fact submitted by the parties.

In 2004, Plaintiff's permanent position within the USPS was an EAS Level-22 position as the Manager of the Murray Station on the east side of Cincinnati. Plaintiff's immediate supervisor was the Area Manager for the east side of Cincinnati. During most of 2005 through mid-February 2006, Plaintiff worked a temporary assignment, *i.e.* a detail, serving as the acting Area Manager of east side of Cincinnati and was supervised by the Postmaster for the City of Cincinnati.[2] As Acting Area Manager, Plaintiff assumed an EAS-23 position and was paid at the EAS-23 level.

In February 2006, Ed Link was given the Area Manager position.[3] Plaintiff was then detailed to lead the Integrated Operating Plan ("IOP") Team in Dayton, Ohio, another EAS-23 position. A few days before Plaintiff went to Dayton, Plaintiff learned that one of the collective bargaining unit employees (also apparently termed "craft employees") in his chain of command, Becky Schneider, learned of e-mail conversations between Plaintiff and a Cincinnati-area station manager. In the emails, the station manager told Plaintiff he did not want Schneider returning to his station.

---

[2] According to Defendant, in December 2005, Plaintiff's position, *i.e.*, the Manager of Murray Station, was filled by Jeff Dawson. Notably, in January 2006, one of Dawson's subordinates, Renee Smith, told Plaintiff that she had been harassed by Dawson.

[3] Around this time, Ed Link's wife, Teresa Link, was hired to be the Human Resources Director for the Cincinnati Postal District. According to Defendant, Ed Link was an EAS-23 employee of the USPS, and as a "trailing spouse" of Teresa Link, he was entitled to a position in the District equivalent to his EAS-23 level position in his prior district. According to Defendant, Ed Link was given the east side of Cincinnati area manager position because, while Plaintiff was the acting area manager, he was not the position's permanent appointee.

After learning of these email conversations, Schneider threatened to file an EEO Complaint. Plaintiff agreed to meet with Schneider concerning her complaints. Plaintiff met with Schneider on February 16, 2006, in a public park near Schneider's work station. At the park, Plaintiff entered Schneider's vehicle. Unknown to Plaintiff, Schneider secretly recorded the conversation. According to Defendant, during the meeting Plaintiff talked about his sex life and, at some point, Schneider apparently had to tell Plaintiff not to touch her.[4] Schneider subsequently reported this incident to the USPS Postal Inspection Service, which began an investigation. Cincinnati Postmaster Chu Falling Star, Human Resources Director Teresa Link, and District Manager Lori Wigley were all notified of this investigation.

According to Defendant, on March 1, 2006, USPS Inspectors interviewed Plaintiff. Plaintiff initially denied discussing his sex life with Schneider during the meeting, though he later admitted as much after the Inspectors noted that they had a audio recording of the meeting. Plaintiff now admits that the sex did come up in the conversation, but only when Plaintiff was discussing the issues that caused his marriage to fall apart. Plaintiff, however, contends that the context of the conversation was not sexual in nature.

On March 10, 2006, the USPS Inspection Report gave a report to District Management. Thereafter, District Management conducted an additional investigation in

---

[4] Plaintiff states that he was not provided a copy of the audio recording, but contests Defendant's version of the substance of the conversation only insofar as Defendant contends that there were statements made by Schneider regarding touching.

which Plaintiff was interviewed on April 18, 2006.[5] After receiving reports from the fact-finding team and the USPS Inspection Service, as well as consulting with the USPS law department, District Management decided to demote Plaintiff to mail handler. District Manager Lori Wigley concurred with the proposed demotion.

On August 26, 2006, Plaintiff met with Wigley and Link, at which time Wigley determined that the proposed demotion was proper. On September 7, 2006, Plaintiff was ordered to report to Dayton as a mail handler. Plaintiff filed an appeal of his demotion to the Merit Systems Protection Board (MSPB). In the MSPB Appeal Form, Plaintiff did not allege discrimination or that he had engaged in whistleblowing.

Following filing of the appeal, the presiding Administrative Law Judge directed Plaintiff and the USPS to file "Prehearing Statements," and Plaintiff was directed to raise any affirmative defenses. Plaintiff filed the required Prehearing Submission but did not raise any issue of age discrimination or that he had engaged in any protected activity. On November 28, 2006, Plaintiff and the USPS agreed to settle the appeal, in which Plaintiff was allowed to maintain his pay and grade as an EAS-22 employee, but would perform an EAS-17 position with no supervisory powers in the Dayton Plant.[6] Pursuant to the

---

[5] According to Defendant, at some time in May 2006, Murray Station's acting Manager Jeff Dawson was sent on a detail to Philadelphia and Plaintiff was returned to his permanent position as Manager of the Murray Station.

[6] Plaintiff argues that he was not required to take the EAS-17 position, but instead chose the EAS-17 position because it would end his time in Chu Falling Star's chain of command and because the position was located close to his residence in the Dayton area.

settlement, Plaintiff's saved pay and grade would end after two years (December 2008) and Plaintiff was required to retire at the end of 2010.

In January 2007, Schneider and the USPS entered into a settlement agreement of an EEO Complaint Schneider filed against the USPS over certain issues including her claim that Plaintiff sexually harassed her. Pursuant to the agreement with Schneider, the USPS paid Schneider $14,233.32 and Schneider's attorney $9,766.68. In addition, the USPS agreed that Schneider would never be in Plaintiff's chain of command.

At some time before Plaintiff's save pay and grade expired, he sought details, transfers or "downgrades" to positions higher than an EAS-17 level from Dayton Area Manager Micheal Kennedy and Dayton Postmaster Darryl Myers. Both men stated that when they mentioned Plaintiff's requests to Chu Falling Star, who had been promoted first to Cincinnati Plant Manager and then to District Manager in June 2008, she told them that Plaintiff "was not qualified."

At about the time Mr. Miller reverted to an EAS-17 level in December, 2008, he applied for several different permanent promotions involving EAS-18 to EAS-21 level positions. Plaintiff applied for an EAS-21 Manager of Customer Services, Huber Heights Post Office. Kennedy and Myers interviewed Plaintiff and he was not selected. Plaintiff contacted an EEO counselor over his non-selection and filed an EEO Complaint claiming he was discriminated against because of his age. While Kennedy submitted an affidavit in response to the EEO investigation stating that he picked the best candidate, he later

admitted that his EEO affidavit was untruthful and that he did not select Plaintiff because he was afraid of Chu Falling Star.

In approximately August 2009, Mr. Miller applied for an EAS-18 Postmaster position in Covington Ohio, an EAS-20 Postmaster position in Bellbrook, Ohio and an EAS-21 Postmaster Position in Franklin, Ohio. Plaintiff was not selected for any of these positions.

Around September 2009, Plaintiff applied for an EAS-20 manager position in the Forest Park Station in Dayton. Acting Dayton Area Manager Pat Brown was the selecting official for that position, and acting Dayton Postmaster Kennedy was the approving official. Plaintiff was not chosen for the Forest Park position. According to Kennedy, he previously told Brown that Chu Falling Star would not allow Plaintiff's promotion.

On December 7, 2009, Plaintiff filed the first of three Complaints with this Court. In that Complaint, Plaintiff complained only that his non-selection for the Huber Heights position was motivated by age discrimination. On December 29, 2009, Plaintiff filed a second EEO Complaint over his non-selection for other positions alleging that his non-selection was motivated by age discrimination and retaliation.

Around June 1, 2010, Plaintiff applied for an EAS-20 manager position at the Dabel Branch Post Office. Dayton Postmaster Karen Garber and Area Manager Kennedy interviewed Plaintiff. Plaintiff was not selected. Around June 25, 2010, Plaintiff applied for an EAS-20 manager position at the West Carrollton Post Office. The

selecting official was Steve Hicks with Garber as the concurring official. Plaintiff was not selected. On September 10, 2010, Plaintiff filed an EEO Complaint alleging that he was not selected for the Dabel and West Carrollton positions on the basis of age discrimination and retaliation.

Thereafter, Plaintiff filed a second Complaint in this Court alleging age discrimination and retaliation with regard to his non-selection for the positions at Covington, Bellbrook, Forest Park, and Franklin, Ohio. Plaintiff's Complaint was later consolidated with the above captioned case. Finally, on June 26, 2011, Plaintiff filed an Amended Complaint in this case alleging age discrimination and retaliation in regard to his non-selection for seven different positions. Defendant now moves for summary judgment on all claims.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

"Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Technologies, Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010) (citing Fed. R. Civ. P. 56(e)(2)). Instead, the party opposing summary judgment "must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." *Id*. (citing Fed. R. Civ. P. 56(e)(2)). As stated by the Sixth Circuit, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Buarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted).

### III. AGE DISCRIMINATION

Plaintiff first claims that Defendant discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. Absent direct evidence of discrimination,[7] Plaintiff must prove discrimination

---

[7] "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (citation omitted). *See also Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) ("a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent").

under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), which first requires a *prima facie* showing of discrimination.

To make a *prima facie* claim of age discrimination a plaintiff must show "that: (1) he was a member of the protected class (i.e., was over 40 years old at the time); (2) he applied for the job vacancy and did not receive it; (3) he was qualified for the position; and (4) the individual hired was (i) similarly situated but (ii) not in the protected class"). "Similarly situated does not mean identical; it means that the plaintiff was 'similar in all of the relevant aspects.'" *Braithwaite v. Dep't of Homeland Sec.*, 473 F. App'x 405, 410 (6th Cir. 2012) (citations omitted); *see also Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004). Upon making a *prima facie* showing of discrimination, the burden shifts to the Defendant to show a non-discriminatory reason for its employment decision. *Id*. If Defendant satisfies its burden, Plaintiff must then prove by a preponderance of the evidence that Defendant's proffered reason is untrue, and in fact, a pretext for illegal discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Here, Defendant argues that Plaintiff cannot satisfy his burden of making a *prima facie* showing of age discrimination because he cannot show he was similarly situated to the persons ultimately selected. Defendant contends that none of the candidates eventually chosen were similarly situated to Plaintiff. Plaintiff fails to address Defendant's contention in this regard and points to no evidence that the candidates ultimately selection were similarly situated.

Nevertheless, even assuming Plaintiff satisfies his burden of establishing a *prima facie* case of age discrimination, Defendant offers a non-discriminatory reason for Plaintiff's non-selection. The selecting officials all testified that their non-selection of Plaintiff was based upon statements made by Chu Falling Star that Plaintiff was not qualified for the position. Chu Falling Star admits that she told her two subordinates that Plaintiff was not qualified," but testified, without contradiction, that "her opinion [in this regard] was based on [Plaintiff's] inappropriate conduct as a manager (with respect to Ms. Schneider) and the expenses that [Plaintiff's] conduct imposed on the USPS [in settling Schneider's claims]." Chu Falling Star specifically denies that age played any role. Defendant contends that "[t]here is not one iota of evidence to the contrary. (Doc. 31, PAGEID 136).

Having satisfied its burden of demonstrating a non-discriminatory reason for Plaintiff's non-selection, Plaintiff must rebut Defendant's explanation by demonstrating pretext. "To establish pretext, a plaintiff must show that an employer's stated reason: (1) had no basis in fact; (2) did not actually motivate the challenged conduct; or (3) was insufficient to explain the challenged conduct." *Simpson*, 359 F. App'x at 569 (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078 (6th Cir.1994)). To meet this burden, a plaintiff must present "'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him.'" *Id*. at 569-70 (citations omitted). "[A] reason cannot be

proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-16 (1993) (emphasis in original); *see also Simpson*, 359 F. App'x at 570.

Here, Plaintiff admits that none of the actual selecting officials harbored any discriminatory animus toward him. In addition, Plaintiff points to no evidence to suggest that *age* played any part and was the real reason behind Chu Falling Star's comments that Plaintiff was not qualified for the positions he sought. (Doc. 35-1, PAGEID 684-86). Instead, Plaintiff attempts to demonstrate pretext by arguing that retaliation was the real reason behind his non-selection.

Based on the foregoing, there is no evidence that age played any part in Plaintiff's non-selection for any position. Accordingly, there being no genuine issue of material fact remaining, Defendant's Motion for Summary Judgment is **GRANTED** with regard to Plaintiff's age discrimination claim.

## IV. RETALIATION

In addition to age discrimination, Plaintiff alleges that Defendant retaliated against him for engaging in a protected activity in violation of 42 U.S.C. § 2000e-3(a), which states that, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under

this subchapter." With regard to participation, "Title VII protects an employee's participation in an employer's internal investigation into allegations of unlawful discrimination where that investigation occurs pursuant to a pending EEOC charge." *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 543 (6th Cir. 2003).

A *prima facie* case of retaliation requires that Plaintiff prove:

> (1) [he] engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 996 (6th Cir. 2009) (citing *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir.2000)). Defendant first argues that Plaintiff's retaliation claim must fail because he cannot show that he participated in protected activity.

Originally, in the Amended Complaint, Plaintiff's retaliation claim was based on the theory that Defendant retaliated against him because "he advised a subordinate [Renee Smith] of the appropriate manner in which to address a complaint of sexual harassment." (Doc. 26, PAGEID 91-92). In responding to Defendant's Motion, Plaintiff does not rely on this theory to support his claim of retaliation. Therefore, the Court concludes that Plaintiff abandons this claim of retaliation.[8]

---

[8] *Benge v. Johnson*, 474 F.3d 236, 245 (6th Cir. 2007) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")

During a deposition taken in May 2010 in connection with a lawsuit filed by Renee Smith, Plaintiff testified that Chu Falling Star retaliated against him because "[s]he lost an MSPB [appeal] and she was pissed."[9] Plaintiff testified similarly in June 2012. (Doc. 31-4, PAGEID 405).[10] Although Plaintiff never specifically alleged retaliation on this basis in his Complaints, Defendant nonetheless argues that any such a retaliation claim must fail because the MSPB appeal is not protected activity. Plaintiff makes no argument to the contrary and points to no evidence upon which the Court could conclude that the MSPB appeal amounts to protected EEOC activity.

Instead, Plaintiff now, for the first time in this case, argues that he was retaliated against because he participated in the investigation of sexual harassment charges brought *against him* by Schneider, *i.e.*, by submitting to interviews with investigators.[11] The Court declines to consider whether Plaintiff successfully demonstrates a *prima facie* case of retaliation under this legal theory because "[a] non-moving party may not raise a new legal theory for the first time in response to the opposing party's summary judgment motion." *In re May*, 368 B.R. 85, 2007 WL 2052185, *9 (6th Cir. BAP Jul. 9, 2007)

---

[9] The Court notes that the parties settled the MSPB appeal. While the initial discipline imposed was modified, it is, perhaps, inaccurate to state that Defendant "lost" the appeal.

[10] During that deposition, when asked why he believed Chu Falling Star opposed Plaintiff's selection for promotion, Plaintiff testified that "she absolutely knew the terms of the settlement" and "[s]he was very upset she lost that MSPB."

[11] As noted by one court, "defending oneself against charges of discrimination - to the extent that such defense involves actual participation in a Title VII proceeding or investigation - is 'protected activity' within the scope of § 704(a) based on a plain reading of the statute's text." *Deravin v. Kerik*, 335 F.3d 195, 204 (2nd Cir. 2003) (citation omitted).

(citing *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir.2005)).[12]

For all of the foregoing reasons, Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim is **GRANTED**.

## V.  CONCLUSION

Accordingly, there being no genuine issue as to any material fact, and Defendant being entitled to judgment as a matter of law, Defendant's Motion for Summary Judgment (Doc. 31) is **GRANTED** in its entirety.  The Clerk shall enter judgment accordingly, and this case shall be terminated on the docket of this Court.

**IT IS SO ORDERED.**


Date:  10/23/12                                                        *s/ Timothy S. Black*
                                                                                  Timothy S. Black
                                                                                  United States District Judge

---

[12]  The Court likewise declines to address Plaintiff's attempt, in response to Defendant's Motion for Summary Judgment, to litigate a newly raised allegation of breach of settlement.